Slip Op. 20-171

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ROYAL BRUSH MANUFACTURING, INC., | |
| Plaintiff, | |
| v. | Before: Mark A. Barnett, Judge |
| UNITED STATES, | Court No. 19-00198 |
| Defendant, | |
| and | |
| DIXON TICONDEROGA CO., | |
| Defendant-Intervenor. | |

## <u>OPINION AND ORDER</u>

[Remanding U.S. Customs and Border Protection's affirmative determination as to evasion in EAPA Case No. 7238.]

Dated: December 1, 2020

<u>Ronald A. Oleynik</u>, Holland & Knight LLP, of Washington, DC, argued for Plaintiff.  With him on the brief were <u>Antonia I. Tzinova</u>, <u>Liliana V. Farfan</u>, and <u>Dariya V. Golubkova</u>.

<u>Ashley Akers</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant.  With her on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.  Of counsel on the brief was <u>Joseph F. Clark</u>, Attorney, Office of the Chief Counsel, U.S. Customs and Border Protection.

<u>Felicia L. Nowels</u>, Akerman LLP, of Tallahassee, FL, argued for Defendant-Intervenor. With her on the brief was <u>Sheryl D. Rosen</u>.

Barnett, Judge:  This matter is before the court on Plaintiff Royal Brush

Manufacturing, Inc.'s ("Royal Brush") motion for judgment on the agency record

pursuant to U.S. Court of International Trade ("USCIT" or "CIT") Rule 56.2.  Confidential

Pl. [Royal Brush's] Mot. for J. on the Agency R., ECF No. 33.  Royal Brush challenges

U.S. Customs and Border Protection's ("Customs" or "CBP") affirmative determination of

evasion of the antidumping duty order on certain cased pencils from the People's

Republic of China ("China") issued pursuant to Customs' authority under the Enforce

and Protect Act ("EAPA"), 19 U.S.C. § 1517 (2018).[1]  Confidential Pl. [Royal Brush's]

Mem. in Supp. of its Mot. for J. on the Agency R. ("Pl.'s Mem.") at 1, ECF No. 33-1.[2]

Customs issued two relevant determinations: (1) Notice of Final Determination as to

Evasion, EAPA Case No. 7238 (May 6, 2019) ("May 6 Determination"), CR 131, PR 57;

and (2) Decision on Request for Admin. Review, EAPA Case No. 7238 (Sept. 24, 2019)

("Sept. 24 Determination"), PR 64 (Customs' *de novo* review of the May 6

Determination).

Royal Brush raises four overarching challenges to Customs' evasion

determination.  Royal Brush argues that: (1) Customs improperly rejected Royal Brush's

---

[1] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and all references to the U.S. Code are to the 2018 edition unless otherwise specified. EAPA was enacted as part of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114–125, § 421, 130 Stat. 122, 161 (2016).

[2] The administrative record for the underlying proceeding is contained in a Confidential Administrative Record ("CR"), ECF Nos. 24-1 (CR 1–12), 24-2 (CR 13–14), 24-3 (CR 15–19), 24-4 (CR 20–27), 24-5 (CR 28–34), 24-6 (CR 35–37), 24-7 (CR 38–41), 24-8 (CR 42–44), 24-9 (CR 45–47), 24-10 (CR 48–50), 24-11 (CR 51), 24-12 (CR 52–54), 24-13 (CR 55–57), 24-14 (CR 58–69), 24-15 (CR 70–86), 24-16 (CR 87–122), 24-17 (CR 123–24), 24-18 (CR 125–26), 24-19 (CR 127–32), and a Public Administrative Record ("PR"), ECF Nos. 23-1 (PR 1–35), 23-2 (PR 36–43), 23-3 (PR 44–64).  The court references the confidential version of the record document unless otherwise specified.

filing seeking to rebut purportedly new factual information contained in Customs'

verification report, Pl.'s Mem. at 9–13; (2) CBP denied Royal Brush procedural due

process and redacted material evidence in an arbitrary and capricious manner, *id.* at

13–20; (3) CBP's use of an adverse inference constituted an abuse of discretion and

was arbitrary and capricious, *id.* at 20–24; and (4) Customs drew irrational conclusions

from the available evidence, *id.* at 24–26; *see also* Confidential Reply Br. of Pl. [Royal

Brush] ("Pl.'s Reply"), ECF No. 43.  Defendant United States ("the Government") and

Defendant-Intervenor Dixon Ticonderoga Company ("Dixon") urge the court to sustain

Customs' evasion determination.  Confidential Def.'s Resp. in Opp'n to Pl.'s Mot. for J.

on the Agency R. ("Def.'s Resp."), ECF No. 38; Def.-Int.'s Resp. in Opp'n to Pl.'s Mot.

for J. on the Agency R. ("Def.-Int.'s Resp."), ECF No. 40.  For the following reasons, the

court remands Customs' determination for reconsideration and further explanation

regarding the aforementioned arguments (1) and (2) and defers resolution of arguments

(3) and (4) pending Customs' redetermination.

### BACKGROUND

### I.   Legal Framework for EAPA Investigations

As noted, EAPA investigations are governed by 19 U.S.C. § 1517.[3]  Section

1517 directs Customs to initiate an investigation within 15 business days of receipt of an

allegation that "reasonably suggests that covered merchandise has been entered into

---

[3] On August 22, 2016, CBP promulgated interim regulations that further guide Customs' conduct of EAPA investigations.  *See Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81 Fed. Reg. 56,477 (CBP Aug. 22, 2016) (interim regulations; solicitation of cmts.); 19 C.F.R. pt. 165 (2017).

the customs territory of the United States through evasion."  19 U.S.C. § 1517(b)(1).

"Covered merchandise" refers to "merchandise that is subject to" antidumping or

countervailing duty orders issued pursuant to 19 U.S.C. § 1673e or 19 U.S.C. § 1671e,

respectively.  *Id.* § 1517(a)(3).  "Evasion" is defined as:

> entering covered merchandise into the customs territory of the United
> States by means of any document or electronically transmitted data or
> information, written or oral statement, or act that is material and false, or
> any omission that is material, and that results in any cash deposit or other
> security or any amount of applicable antidumping or countervailing duties
> being reduced or not being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A).[4]

Once Customs initiates an investigation, it has 90 calendar days to decide "if

there is a reasonable suspicion that such covered merchandise was entered into the

customs territory of the United States through evasion" and, if so, to impose interim

measures.  *Id.* § 1517(e).  Interim measures consist of:

> (1) suspend[ing] the liquidation of each unliquidated entry of such covered
> merchandise that entered on or after the date of the initiation of the
> investigation; (2) . . . extend[ing] the period for liquidating each
> unliquidated entry of such covered merchandise that entered before the
> date of the initiation of the investigation; and (3) . . . such additional
> measures as [Customs] determines necessary to protect the revenue of
> the United States . . . .

*Id.*

Pursuant to section 1517(c), Customs' determination whether covered

merchandise entered the United States through evasion must be "based on substantial

---

[4] Section 1517(a)(5)(B) contains exceptions for clerical errors, which are not relevant
here.  19 U.S.C. § 1517(a)(5)(B).

evidence."  *Id.* § 1517(c)(1)(A).  Customs may, however, "use an inference that is

adverse to the interests of" the person alleged to have engaged in evasion or the

foreign producer or exporter of the covered merchandise when "selecting from among

the facts otherwise available" if that person "failed to cooperate by not acting to the best

of the party or person's ability to comply with a request for information."  *Id.*

§ 1517(c)(3)(A).

      Within 30 days of Customs' determination as to evasion, the person alleging

evasion, or the person found to have engaged in evasion, may file an administrative

appeal with Customs "for *de novo* review of the determination."  *Id.* § 1517(f)(1).  From

the date that Customs completes that review, either of those persons have 30 business

days in which to seek judicial review.  *Id.* § 1517(g)(1).

## II.    Factual and Procedural History

      In 2015, Royal Brush, a U.S. importer, began importing pencils from a company

located in the Republic of the Philippines ("the Philippines").[5]  Importer Request for

Information (Oct. 3, 2018) ("Importer RFI") at 3, CR 66, PR 26.[6]  On February 27, 2018,

Dixon lodged an allegation with CBP in which it averred that Royal Brush was

transshipping pencils made in China—and subject to an antidumping duty order on

certain cased pencils from China—through the Philippines.  Allegation under [EAPA]

---

[5] The name of the alleged manufacturer is treated as confidential in the parties' briefs
and is immaterial to the outcome of this case; therefore, the court will refer to the
company as "the Philippine Shipper."

[6] When possible, the court refers to the page numbering embedded in the cited
document.  Otherwise, the court cites to the applicable CBP Bates stamp on the
page(s).

(Feb. 27, 2018) ("Allegation") at 3–4, CR 1, PR 2; *see also Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66,909 (Dep't Commerce Dec. 28, 1994) (antidumping duty order) ("*Pencils Order*"); *Certain Cased Pencils From the People's Republic of China*, 82 Fed. Reg. 41,608 (Dep't Commerce Sept. 1, 2017) (continuation of antidumping duty order).  The scope of the *Pencils Order* covers "certain cased pencils . . . that feature cores of graphite or other materials encased in wood and/or man-made materials, whether or not decorated and whether or not tipped (e.g., with erasers, etc.) in any fashion, and either sharpened or unsharpened."  59 Fed. Reg. at 66,909.

On March 27, 2018, CBP initiated an investigation in EAPA Case No. 7238. Initiation of Investigation in EAPA Case No. 7238 (Mar. 27, 2018), CR 4, PR 5. Because CBP had acknowledged receipt of Dixon's allegation on March 6, 2018, "the entries covered by this investigation are those that were entered for consumption, or withdrawn from a warehouse for consumption, from March 6, 2017 through the pendency of this investigation."  Notice of Initiation of Investigation and Interim Measures (June 26, 2018) ("Initiation Notice") at 1, CR 8, PR 14.[7]  On May 25, 2018 (with revisions submitted on July 19, 2018), Royal Brush responded to CBP's Form 28 Request for Information.  EAPA Case No. 7238 – Resp. to CBP Form 28 (July 19, 2018), CR 10, PR 19.

---

[7] Pursuant to 19 C.F.R. § 165.2, subject entries "are those entries of allegedly covered merchandise made within one year before the receipt of an allegation," but, "at its discretion, CBP may investigate other entries of such covered merchandise."

On June 6, 2018, a CBP Attaché conducted an unannounced site visit at the

Philippine Shipper's facility in Subic Bay, Philippines, and, thereafter, produced a report

summarizing the Attaché's findings.  EAPA 7238–Site Visit Report: [Philippine Shipper],

Subic Bay, Philippines (June 15, 2018) ("Attaché Report"), CR 5, PR 8; *see also* May 6

Determination at 4 (identifying the date of the visit as June 6, 2018).[8]  The Attaché

concluded that the Philippine Shipper had "the capacity to finish some product, but the

on-site evidence clearly reveal[ed] the repacking of completely finished products from

China."   Attaché Report at CBP0002540.  During the visit, the Attaché observed the

Philippine Shipper's "staff . . . making minor alterations or simply sharpening pencils"

and "repacking China origin products into boxes labeled, 'Made in Philippines.'"  *Id*. at

CBP0002541.  The Attaché noted that manufacturing equipment was covered in dust or

cobwebs; the "manufacturing warehouse did not indicate production of any products for

some time"; raw materials such as lead or cores were absent from the facility; and the

storage area contained "boxes with Chinese characters and English language boxes

stating, 'Made in the Philippines.'"  *Id.*

On June 26, 2018, CBP informed Royal Brush of the initiation of the investigation

and imposition of interim measures.  Initiation Notice at 1, 3–6.  With respect to the

imposition of interim measures, Customs explained that evidence gathered during the

Attaché site visit, documents provided by Royal Brush in its response to CBP's Form

---

[8] The Attaché Report indicates that the visit occurred on July 6, 2018; however, this appears to be a typographical error given that the report is dated June 15, 2018. Attaché Report at CBP0002540.

28, and documents submitted by Dixon in support of its allegation[9] "collectively create[d]

a reasonable suspicion as to evasion."  *Id.* at 6.  Accordingly, Customs suspended

liquidation for any entries that entered on or after March 27, 2018, the date of initiation

of this investigation, and extended liquidation for all unliquidated entries that entered

before March 27, 2018.  *Id.*

Following the imposition of interim measures, Royal Brush and the Philippine

Shipper responded to Customs' further requests for information.  *See, e.g.*, EAPA Case

No. 7238 - Resp. to CBP Importer Request for Information (Part I) – Updated

Submission per Request of Sept. 28, 2018 (Oct. 3, 2018), CR 12, PR 24 (submitted by

the Philippine Shipper); Importer RFI (submitted by Royal Brush).

From November 14, 2018, through November 17, 2018, Customs conducted a

scheduled verification at the Philippine Shipper's facility.  On-Site Verification Report

(Feb. 11, 2019) ("Verification Report") at 2, CR 129.[10]  Prior to verification, Customs

informed the Philippine Shipper that it would be required to discuss its production

process and submit documentation corresponding to five identified invoice numbers.

---

[9] Customs pointed to a purchase contract allegedly entered into between the alleged
Chinese Manufacturer and a Trading Company that contained instructions on marking
merchandise identified in Royal Brush's online catalog as "Made in Philippines."
Initiation Notice at 2 (citing Allegation, Ex. 1).  Customs pointed to additional
documentation allegedly demonstrating that the merchandise would be shipped to Subic
Bay.  *Id.* (citing Allegation, Ex. 2).
[10] Customs released a public version of the verification report on February 25, 2019.
*See* On-Site Verification Report (Feb. 25, 2019), PR 47.

Site Verification Engagement Letter (Nov. 7, 2018) ("Verification Agenda") at 2, CR 121, PR 33–34.

In the report, Customs explained that it "[i]nterviewed company officials about their company operations and record keeping"; "[t]oured the facilities"; and "[r]eviewed original records to verify the on-the-record responses" submitted by the Philippine Shipper.  Verification Report at 2.  CBP summarized the "relevant facts and observations" with respect to the Philippine Shipper's: (1) company ownership, operations, and recordkeeping; (2) co-mingled raw material and Chinese pencils; (3) verification of the five identified invoices plus two additional invoices; (4) production capability and capacity; and (5) payroll records.  *Id.* at 3–10.  Customs also attached to the Verification Report 32 photographs taken inside the Philippine Shipper's facility.  *Id.*, Attach. II.

Customs explained that the Philippine Shipper was unable to provide inventory receipt records for pencils purchased from Chinese suppliers and, at times, handwrote "pencils" with inventory receipts ostensibly related to the purchase of raw materials.  *Id.* at 5.  CBP encountered difficulties verifying the identified invoices as a result of the Philippine Shipper's failure to provide requested documents, deletion of documents, or provision of documents that had been altered or redacted.  *Id.* at 6–8.  CBP found that the Philippine Shipper's payroll records indicated that the company's production capacity was far less than the amount claimed and, thus, that the Philippine Shipper's amount of exports to the United States substantially exceeded its production capacity as calculated by CBP's verification team.  *Id.* at 8–9.  Lastly, "[e]vidence obtained during

the verification" indicated that the Philippine Shipper's previously-submitted payroll

documents "were unsupported." *Id.* at 9; *see also id.* at 10 (stating that the verification

team was "unable to verify that the stated employees were, in fact, paid and/or that

there was production during those time periods").

On March 6, 2019, Customs informed Royal Brush that because the Verification

Report contained "new information," Royal Brush was entitled to submit rebuttal

information "related specifically to the information that was provided in the verification

report." Email from Kareen Campbell to Ron Oleynik (March 6, 2019, 16:04 EST) at

CBP0002287, PR 49. While Royal Brush timely filed its rebuttal, on March 19, 2019,

Customs informed Royal Brush that it was rejecting the submission. Email from Kareen

Campbell to Ron Oleynik (March 19, 2019, 20:34 EST) at CBP0002295, PR 50.

Customs explained that it rejected the rebuttal, in part, because of the inclusion of new

factual information that was "not furnished during the verification." *Id.* On March 21,

2019, Customs stated that it had previously misinterpreted its regulation, 19 C.F.R.

§ 165.23(c),[11] and now determined that because "the verification report does not

contain new information," Royal Brush's "rebuttal to the verification report [was] not

---

[11] Section 165.23(c) provides that
   [i]f CBP places new factual information on the administrative record on or
   after the 200th calendar day after the initiation of the investigation (or if
   such information is placed on the record at CBP's request), the parties to
   the investigation will have ten calendar days to provide rebuttal
   information to the new factual information.
19 C.F.R. § 165.23(c)(1).

warranted."  Email from Kareen Campbell to Liliana Farfan (March 21, 2019, 15:14

EST) ("2nd Rejection Email") at CBP0002290, PR 50.

On March 25, 2019, Royal Brush submitted written arguments pursuant to 19

C.F.R. § 165.26.[12]  EAPA Case No. 7238 – Resubmission of Written Arguments to be

Placed on the Admin. R. (March 25, 2019) ("Royal Brush's Case Br."), CR 130, PR 51.

Among other things, Royal Brush argued that its procedural due process rights had

been violated by virtue of the extensive redactions to the Allegation, Attaché Report,

and Verification Report and CBP's rejection of Royal Brush's rebuttal submission.  *Id.* at

22–29.  CBP further argued that CBP's rejection of the rebuttal was arbitrary and

capricious.  *Id.* at 29–35.

On May 6, 2019, Customs issued an affirmative determination as to evasion.

*See* May 6 Determination.  Customs found "that substantial evidence, in conjunction

with an assumption of adverse inferences related to information requested but not

provided, indicates [that] Royal Brush's imports were merchandise entered through

evasion."  *Id.* at 5; *see also id.* at 8 (finding substantial evidence to support a finding of

evasion based on the available evidence "and the absence of information due to [the]

---

[12] Customs permits "parties to the investigation" to submit "written arguments that
contain all arguments that are relevant to the determination as to evasion and based
solely upon facts already on the administrative record in that proceeding."  19 C.F.R.
§ 165.26(a)(1).  The term "[p]arties to the investigation" encompasses both the person
"who filed the allegation of evasion and the importer . . . who allegedly engaged in
evasion."  19 C.F.R. § 165.1.  The term "interested party" is defined more broadly to
include, among others, the parties to the investigation and the "foreign manufacturer,
producer, or exporter . . . of covered merchandise."  *Id.*

Philippine[] Shipper's failure to cooperate and comply to the best of its ability").

Customs did not address Royal Brush's due process arguments except to state that the

information and findings contained in the verification report were "covered by" Customs'

regulation, 19 C.F.R. § 165.25.  *Id.* at 5 n.15.[13]

On June 18, 2019, Royal Brush filed a request for an administrative review of

Customs' Determination.  Request for Admin. Review (June 18, 2019) ("Req. for Admin.

Review"), CR 132, PR 58.  On September 24, 2019, CBP completed its *de novo* review.

Sept. 24 Determination at 1.  CBP concluded that substantial evidence supported a

finding that the pencils imported by Royal Brush during the period of investigation were

manufactured in China.  *Id.* at 11, 18–19; *see also id.* at 12–18 (discussing the

evidence).  Further, while stating that they were not necessary to its decision, CBP

concluded that "adverse inferences were warranted, inasmuch as the importer, as well

as the alleged foreign producer and exporter, *failed* to provide sufficient evidence to

demonstrate that the pencils imported by Royal Brush were manufactured in the

Philippines."  *Id.* at 18.  CBP thus "reasonably filled those evidentiary gaps with some

adverse inferences."  *Id.*

Royal Brush timely sought judicial review pursuant to 19 U.S.C. § 1517(g)(1).

*See* Summons, ECF No. 1; Compl., ECF No. 2.  The court heard confidential oral

argument on October 6, 2020.  Docket Entry, ECF No. 49.

---

[13] The regulation states that, following a verification, "CBP will place any relevant
information on the administrative record and provide a public summary."  19 C.F.R.
§ 165.25(b).

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 517(g) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517(g), and 28 U.S.C. § 1581(c).

EAPA directs the court to determine whether a determination issued pursuant to 19 U.S.C. § 1517(c) or an administrative review issued pursuant to 19 U.S.C. § 1517(f) was "conducted in accordance with those subsections." 19 U.S.C. § 1517(g)(1). In so doing, the court "shall examine . . . whether [CBP] fully complied with all procedures under subsections (c) and (f)" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1517(g)(2).[14]

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). However, Customs "must examine the relevant data and articulate a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice

---

[14] Customs' regulation refers to an "initial determination," 19 C.F.R. § 165.41, and a "final administrative determination" that is subject to judicial review, *id.* § 165.46. The statute does not use those terms or explicitly limit the scope of judicial review to Customs' *de novo* review of the earlier determination. *See* 19 U.S.C. § 1517(g). At oral argument, Royal Brush opined that only the September 24 Determination is judicially reviewable because it constitutes CBP's *de novo* reconsideration of the May 6 Determination. Oral Arg. 4:40–4:48 (reflecting the time stamp of the recording); *see also* Pl.'s Mem. at 1; Pl.'s Reply at 10 n.11. The Government and Dixon argued that both determinations are subject to judicial review. Oral Arg. 11:05–11:15, 19:11–19:55. The court's disposition of the matter herein on procedural grounds rather than the substantive merits of Customs' affirmative evasion determination does not require the court to resolve these competing arguments.

made.'"  *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

"An abuse of discretion occurs [when] the decision is based on an erroneous

interpretation of the law, on factual findings that are not supported by substantial

evidence, or represents an unreasonable judgment in weighing relevant factors."

*Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation

omitted).  "Courts look for a reasoned analysis or explanation for an agency's decision

as a way to determine whether a particular decision is arbitrary, capricious, or an abuse

of discretion."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir.

1998).

Discussion

I.   **CBP's Rejection of Royal Brush's Rebuttal Submission**

  **A.  Parties' Contentions**

Royal Brush contends that CBP's Verification Report contained new factual

information and, thus, CBP's rejection of its rebuttal submission was arbitrary,

capricious, and an abuse of discretion.  Pl.'s Mem. at 9–13; Pl.'s Reply at 2–3.[15]

Recognizing that neither the EAPA statute nor CBP's regulations define "factual

information," Royal Brush finds support for its position in the definition used by the U.S.

---

[15] Royal Brush also contends that Customs' rejection of the rebuttal submission denied
Royal Brush "a meaningful opportunity to be heard."  Pl.'s Mem. at 9; *see also* Pl.'s
Reply at 4.  Royal Brush did not, however, substantiate its due process concerns with
respect to this issue and, thus, the court does not further address the contention.  *See,
e.g.*, *United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013)
("It is well established that arguments that are not appropriately developed in a party's
briefing may be deemed waived.").

Department of Commerce ("Commerce") in antidumping and countervailing duty proceedings.  Pl.'s Mem. at 10–11 (discussing 19 C.F.R. § 351.102(b)(21) and related case law).  Royal Brush further contends that Customs' assertion that the contents of the Verification Report are "covered by 19 C.F.R. § 165.25" lacks merit because the regulation does not preclude information in the Verification Report from constituting "new factual information."  *Id.* at 12 n.7.

The Government contends that Customs properly rejected Royal Brush's rebuttal submission because the Verification Report did not contain new factual information. Def.'s Resp. at 14–15.  Rather, the Government contends, CBP conducted "a quintessential verification" in order to test the accuracy of the submitted data, *id.* at 16, and simply "summarized its findings in the [V]erification [R]eport," *id.* at 18.  The Government further contends that Customs provided an adequate explanation for its decision to reject Royal Brush's rebuttal submission.  *Id.* at 19–20.  Dixon advances substantially similar arguments.  Def.-Int.'s Resp. at 4–5.

### B. CBP Must Reconsider and Further Explain its Rejection of Royal Brush's Rebuttal Submission

Customs' rejection of Royal Brush's rebuttal submission turned on Customs' conclusion that the Verification Report did not contain new factual information.  2nd Rejection Email at CBP0002290.  CBP is required to provide "a reasoned analysis or explanation" for that decision, *Wheatland Tube*, 161 F.3d at 1369, but has not done so here.

Customs' regulations permit parties to the investigation "to provide rebuttal information" to any "new factual information" that Customs "places . . . on the administrative record on or after the 200th calendar day after the initiation of the investigation."  19 C.F.R. § 165.23(c)(1).  Customs' conclusory statement that "the verification report does not contain new information," 2nd Rejection Email at CBP0002290, lacks any identification of the standard CBP used to define "new factual information" or application of that standard to the Verification Report.  Customs' subsequent assertion that the Verification Report and its exhibits "are covered by [19 C.F.R.] § 165.25" fares no better.  May 6 Determination at 5 n.15; Sept. 24 Determination 16 n.16.  While the regulation directs CBP to "place any relevant [verification] information on the administrative record and provide a public summary," 19 C.F.R. § 165.25, it does not explicitly preclude that information from being "new" for purposes of 19 C.F.R. § 165.23(c)(1).

The Government's argument that the purpose of verification is to test the accuracy of submitted data is not persuasive.  Def.'s Resp. at 15–16 (citing *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 39 CIT ___, ___, 61 F.Supp.3d 1306, 1349 (2015); *Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 41 CIT ___, ___, 273 F.Supp.3d 1225, 1242 (2017); *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 28 CIT ___, 353 F. Supp. 2d 1294, 1304 (2004)).  The cited cases indicate Commerce's views on verification, not Customs' views.  *See, e.g.*, *Borusan*, 61 F. Supp. 3d at 1349.  Further, at oral argument, the Government explained that CBP does not take the position that the contents of a verification report may never constitute

new factual information.  Oral Arg. at 28:00–28:07.  Thus, the Government's argument

sheds no light on CBP's basis for deciding that the Verification Report at issue here did

not contain new factual information.

It is not the court's role to "supply a reasoned basis for [Customs'] action that

[Customs] itself has not given."  *State Farm*, 463 U.S. at 43 (quoting *SEC v. Chenery*

*Corp.*, 332 U.S. 194, 196 (1947)).  Accordingly, the court may not adopt Commerce's

definition of factual information for purposes of an EAPA proceeding and apply that

definition to the Verification Report to resolve the issue.[16]  When, as here, the court is

tasked with reviewing a decision based on an agency record, and that record does not

support the contested decision, the court must remand for further proceedings.  *See,*

*e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before

the agency does not support the agency action, if the agency has not considered all

relevant factors, or if the reviewing court simply cannot evaluate the challenged agency

action on the basis of the record before it, the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation.

The reviewing court is not generally empowered to conduct a *de novo* inquiry into the

matter being reviewed and to reach its own conclusions based on such an inquiry.");

*Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381–82 (Fed. Cir. 2003).

---

[16] At oral argument, the Government opined that, in the absence of a Customs definition of "factual information," the court may find Commerce's definition instructive.  Oral Arg. 22:57–23:11, 24:07–24:10.

Accordingly, this issue is remanded to CBP for reconsideration and further

explanation.[17]

## II.   Royal Brush's Procedural Due Process Claims

### A. Parties' Contentions

Royal Brush contends that CBP's administration of the EAPA proceeding denied

Royal Brush procedural due process and was arbitrary and capricious.  Pl.'s Mem. at

13–20; *see also* Pl.'s Reply at 5–9.  In particular, Royal Brush argues: (1) CBP redacted

or otherwise withheld substantial amounts of record information, some of which CBP

relied on to support its affirmative evasion determination, Pl.'s Mem. at 14–17; (2) Royal

Brush lacked adequate notice concerning the information that would be requested or

was considered missing from the record, *id.* at 17–18; (3) CBP "maintain[ed] a secret

administrative record" to which Royal Brush lacked full access until it obtained judicial

review, *id.* at 18–19; and (4) Customs' regulatory definition of "parties to the

investigation" as a subset of "interested parties" prevented the Philippine Shipper "from

fully participating in the proceedings," *Id.* at 19–20.  Royal Brush further contends that

---

[17] Because the court is remanding this issue, the court does not reach Royal Brush's alternative argument that Customs failed to weigh the factors set forth in *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 CIT 98, 123, 815 F. Supp. 2d 1342, 1365 (2012), regarding the acceptance of untimely information.  Pl.'s Mem. at 12–13; *see also* Pl.'s Reply at 4–5.  Additionally, Dixon's contention that CBP's determination should be affirmed even if the Verification Report contains new information because CBP relied on evidence other than the information contained in the Verification Report lacks merit.  Def.-Int.'s Resp. at 5.  If the Verification Report contains new information that Royal Brush is entitled to rebut, CBP will need to incorporate that rebuttal information into its remand redetermination.

Customs' failure to explain why it redacted or withheld information from Royal Brush amounts to arbitrary and capricious action.  *Id.* at 20.

The Government contends that Royal Brush has failed to "identify any protected interest of which it was allegedly deprived" by CBP's management of the administrative record and, thus, Royal Brush's due process claims must fail.  Def.'s Resp. at 24; *id.* at 27.  The Government further contends that Royal Brush had adequate notice of the claim against it, *id.* at 23–24, and its "generalized complaints about the EAPA process do not entitle it to relief," *id.* at 25.[18]

### B.  A Remand is Required for CBP to Comply with Procedural Requirements Concerning Royal Brush's Access to Information

While Royal Brush raises various challenges to CBP's administration of the underlying proceeding, at oral argument, it inferred that each claim is grounded in Royal Brush's overarching concern that CBP procedurally erred in failing to disclose information that CBP relied on in its determination.  *See* Oral Arg. 1:41:45–1:42:37, 1:56:04–1:57:39, 2:29:22–2:31:07, 2:35:25–2:36:15.  As discussed below, the record indicates that Customs failed to ensure that confidential filings were accompanied by the requisite public summaries.  Thus, on remand, CBP must address and remedy this deficiency.

"The Fifth Amendment prohibits the deprivation of life, liberty, or property without due process of law."  *U.S. Auto Parts Network, Inc. v. United States*, 42 CIT ___, ___, 319 F. Supp. 3d 1303, 1310 (2018) (citing U.S. Const. amend. V).  Thus, "[t]he first

---

[18] Dixon did not respond to Royal Brush's due process arguments.

inquiry in every due process challenge is whether the plaintiff has been deprived of a

protected interest in property or liberty." *Int'l Custom Prods., Inc. v. United States*, 791

F.3d 1329, 1337 (Fed. Cir. 2015) (citation omitted).  While "engaging in foreign

commerce is not a fundamental right protected by notions of substantive due process,"

*NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998), an importer

participating in an administrative proceeding has a procedural due process right to

"notice and a meaningful opportunity to be heard," *PSC VSMPO-Avisma Corp. v. United

States* , 688 F.3d 751, 761–62 (Fed. Cir. 2012) [hereinafter *Avisma*] (quoting *LaChance

v. Erickson*, 522 U.S. 262, 266 (1998));[19] *see also Nereida Trading Co. v. United States*,

34 CIT 241, 248, 683 F. Supp. 2d 1348, 1355 (2010) (assuming that the plaintiff had "a

protected interest in the proper assessment of tariffs on goods already imported" and

further examining "what process is due") (citation omitted); *Transcom, Inc. v. United

States*, 24 CIT 1253, 1271, 121 F. Supp. 2d 690, 707 (2000) ("It is impossible to

comprehend how an importer's lack of a vested right to import merchandise in the future

negates the obligation to provide the importer with notice prior to imposing an

---

[19] The Government argues that the court should not address Royal Brush's arguments
because Royal Brush failed to adequately identify a protected interest.  Def.'s Resp. at
24, 27.  Royal Brush argued, however, that as "an importer[] participating in an
administrative proceeding" it had a due process right to "notice and a meaningful
opportunity to be heard."  Pl.'s Mem. at 13 (quoting *Avisma*, 688 F.3d at 761–62).
Waiver is not implicated when the parties' briefs on an issue "do[] not deprive [the court]
in substantial measure of that assistance of counsel which the system assumes."  *MTZ
Polyfilms, Ltd. v. United States*, 33 CIT 1575, 1579, 659 F. Supp. 2d 1303, 1308 (2009)
(alteration original) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983))
(discussing, but ultimately declining to apply, the doctrine of waiver).  While Royal Brush
could have been more explicit as to the nature of the protected interest, the parties'
briefing on these matters is sufficient for the court to address the competing arguments.

antidumping duty for the merchandise already imported.").  In general, "notice [must be]

reasonably calculated, under all the circumstances, to appri[s]e interested parties of the

pendency of the action and afford them an opportunity to present their objections."

*Transcom*, 24 CIT at 1272, 121 F. Supp. 2d at 708 (quoting *Mullane v. Cent. Hanover*

*Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  Such opportunity must occur "at a

meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333

(1976)).

During the investigation, Royal Brush alerted Customs to its concerns regarding

the extent of the redactions to various documents and Royal Brush's corresponding

inability to fully defend its position.  *See* Submission of Written Args. to be Placed on the

Admin. R. (Nov. 13, 2018), PR 36 (arguing that due process required CBP to provide

copies of the photographs of the Philippine Shipper's facility attached to the Attaché

Report to Royal Brush or to the Philippine Shipper before verification, and there was no

reason to withhold the photographs from the Philippine Shipper since the photographs

pertained to that company's business information); Royal Brush's Case Br. at 4, 22–25

(arguing that Royal Brush had been denied procedural due process based on CBP's

treatment of confidential information in the Allegation, Attaché Report, and Verification

Report); Req. for Admin. Review at 24 (same).  Customs did not respond to Royal

Brush's request for disclosure of the photographs attached to the Attaché Report or

address Royal Brush's due process arguments in the May 6 Determination or the

September 24 Determination.  Customs therefore "failed to consider an important

aspect of the problem," resulting in a determination that is arbitrary and capricious.  *SKF*

*USA Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011) (quoting *State Farm*,

463 U.S. at 43).

Further, while "procedural due process guarantees do not require full-blown, trial-

type proceedings in all administrative determinations," *Kemira Fibres Oy v. United*

*States*, 18 CIT 687, 694, 858 F. Supp. 229, 235 (1994), due process "forbids an agency

to use evidence in a way that forecloses an opportunity to offer a contrary presentation,"

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4

(1974).  Thus, to comply with due process, Customs' procedures must afford adequate

opportunity for importers to respond to the evidence used against them.

EAPA does not require or establish a procedure for the issuance of an

administrative protective order ("APO") akin to the procedure used in antidumping and

countervailing duty proceedings or otherwise address Customs' management of

confidential information.  *Compare* 19 U.S.C. § 1517 (governing EAPA investigations),

*with* 19 U.S.C. § 1677f(c)(1)(A)–(B) (establishing procedures for the disclosure of

proprietary information pursuant to a protective order in Commerce proceedings).

However, Customs has promulgated a regulation governing the release of information

provided by interested parties, 19 C.F.R. § 165.4.  Subsection (a)(1) of the regulation

contains instructions for interested parties to request business confidential treatment of

information contained in submissions and states the requirements that must be met.  19

C.F.R. § 165.4(a)(1).  Subsection (a)(2) further requires the submitter to file "a public

version of the submission" that, when possible, "contain[s] a summary of the bracketed

information in sufficient detail to permit a reasonable understanding of the substance of

the information." *Id.* § 165.4(a)(2).  Subsection (e) also directs that "[a]ny information that CBP places on the administrative record, when obtained other than from an interested party subject to the requirements of this section, will include a public summary of the business confidential information." *Id.* § 165.4(e).

While Royal Brush did not explicitly reference 19 C.F.R. § 165.4 in its papers, CBP's compliance with its regulation concerning public summarization of confidential information is relevant to assessing Royal Brush's claim that CBP denied Royal Brush a meaningful opportunity to participate in the administrative proceeding.  *See Sichuan Changhong Elec. Co. v. United States*, 30 CIT 1886, 1890–92, 466 F. Supp. 2d 1323, 1327–29 (2006) (due process claim did not succeed when the agency complied with its statutory and regulatory obligations, which otherwise constituted "a reasonable means to bring an administrative procedure to closure"); *Kemira Fibres*, 18 CIT at 694–95, 858 F. Supp. at 235–36 (failure to comply with regulatory procedures constituted "arbitrary and capricious" conduct that "deprived [the plaintiff] of its constitutional due process right").  The court's review of the administrative record reveals CBP's inattention to the requirement for a public summary of information designated business confidential.

The record shows, for example, that the public version of Dixon's Allegation redacts the confidential information in the narrative portion and omits the exhibits but does not separately summarize the confidential information in a public document.  *See generally* Allegation (public version).  Likewise, there are no public summaries of the confidential information redacted from the Attaché Report or Verification Report, including their respective photographs or exhibits.  *See generally* Attaché Report (public

version); Verification Report (public version); Foreign Party – Verification Exhibits (Nov.

30, 2018), PR 39–46.  The lack of public summaries accompanying the Attaché Report

and Verification Report are particularly concerning given CBP's reliance on those

reports in its determination.  *See, e.g.*, Sept. 24 Determination at 13–14 ("The CBP

Attaché's Report, complete with observations and photographs, unequivocally

demonstrates repackaging of Chinese pencils into boxes labeled as made in the

Philippines and destined for the United States.").  There is no indication that the

redacted information was not susceptible to public summarization and CBP has not

indicated that is the case.  Thus, the court finds that, in this respect, CBP failed to afford

Royal Brush "the opportunity to be heard at a meaningful time and in a meaningful

manner."[20]  *Eldridge*, 424 U.S. at 333.[21]

---

[20] The Government asserted at oral argument that Royal Brush, after obtaining access
to the complete administrative record on judicial review, has failed to articulate
arguments it would have made if given greater access during the investigation.  Oral
Arg. 1:31:53–1:32:43.  While Royal Brush's *counsel* has access to sealed filings during
judicial review pursuant to a protective order, counsel is not able to share that
information with Royal Brush for the purpose of forming arguments.  *See generally*
Protective Order (Dec. 16, 2019), ECF No. 22.  Thus, the Government's argument fails
to persuade the court that a remand to produce public summaries in accordance with
CBP's regulation is not required.  Furthermore, access to the complete record on
judicial review cannot cure improper withholding of information by Customs because the
court applies a deferential standard of review to Customs' evasion determination.  *Cf.
S.D. v. U.S. Dept. of Interior*, 787 F. Supp. 2d 981, 996–99 (D.S.D. 2011) (failure by
administrative agency to provide plaintiffs with 23 documents on which the agency
based its decision constituted a due process violation that was not cured by review of
the decision by an appellate board before which plaintiffs had access to the complete
record because the board applied a deferential standard of review).
[21] As previously noted, Plaintiff's additional due process arguments are facets of its
overarching claim regarding the lack of access to relevant evidence.  Because the court
is remanding the matter for CBP to remedy this deficiency, the court declines to address

Accordingly, the court remands the matter to Customs to address and remedy the lack of public summaries by providing Royal Brush an opportunity to participate on the basis of information that it should have received during the underlying proceeding. To be clear, the court does not hold that Royal Brush is entitled to receive business confidential information. Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it. However, Customs must ensure compliance with the public summarization requirements provided in its own regulations.[22]

CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Customs' evasion determination is remanded to CBP for reconsideration and further explanation regarding the existence of new factual information in the Verification Report and, to the extent the Verification Report contains new factual information, Royal Brush must be afforded an opportunity to rebut that information; it is further

---

Royal Brush's remaining arguments. To the extent these arguments continue to represent live controversies, Royal Brush must renew the arguments on remand to ensure that CBP has adequate opportunity to respond and, thus, produce a judicially reviewable determination on those issues.

[22] The court is mindful that parties sometimes question whether Commerce always complies with a substantially similar requirement in its regulations, 19 C.F.R. § 351.304(c)(1). Commerce's actions are not now before the court and the court cannot ignore the robust APO procedures that mitigate any impact that might result in the case of Commerce's noncompliance.

**ORDERED** that Customs' evasion determination is remanded for CBP to comply with the public summary requirement set forth in 19 C.F.R. § 165.4 and afford Royal Brush an opportunity to present arguments based on that information; it is further

**ORDERED** that the court will defer resolution of Royal Brush's remaining arguments pending Customs' redetermination; it is further

**ORDERED** that Customs shall file its remand redetermination on or before March 1, 2021; it is further

**ORDERED** that, within 14 days of the date of filing of Customs' remand redetermination, Customs must file an index and copies of any new administrative record documents; it is further

**ORDERED** that the deadline for filing comments after remand shall be governed by USCIT Rule 56.2(h)(2)–(3); and it is further

**ORDERED** that any comments or responsive comments must not exceed 5,000 words.


/s/       Mark A. Barnett
Mark A. Barnett, Judge


Dated: December 1, 2020
         New York, New York