**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ROYAL BRUSH MANUFACTURING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>DIXON TICONDEROGA CO.,<br><br>Defendant-Intervenor. | **Court No. 19-cv-00198**<br><br>**PUBLIC VERSION**<br><br>*{ Confidential } Proprietary Information Removed from pgs. 5, 7, 12, 13, 14* |

# PLAINTIFF ROYAL BRUSH MANUFACTURING, INC.'s OPPOSITION COMMENTS TO AGENCY FINAL REMAND REDETERMINATION PURSUANT TO COURT REMAND

Ronald A. Oleynik
Antonia I. Tzinova
Dariya V. Golubkova
Libby K. Bloxom
**HOLLAND & KNIGHT LLP**
800 17th Street NW, Suite 1100
Washington, DC 20006
Tel: (202) 457-7183
*Counsel to Plaintiff Royal Brush Manufacturing, Inc.*

Dated: April 26, 2021

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... I

**I. COURT'S REMAND ORDER** .......... 1

**II. PROCEDURAL HISTORY ON REMAND** .......... 2

**III. ARGUMENT** .......... 3

**A. CBP'S ACTIONS ON REMAND CONTINUE TO DEPRIVE ROYAL BRUSH OF DUE PROCESS** .......... 4

**1. CBP'S "REVISED" PUBLIC SUMMARIES UNLAWFULLY LIMIT ROYAL BRUSH'S ACCESS TO INFORMATION** .......... 4

**2. CBP FAILS TO PROVIDE SUFFICIENT NOTICE** .......... 9

**B. CBP FAILS TO CORRECTLY RESOLVE WHETHER THE VERIFICATION REPORT CONSTITUTES "NEW FACTUAL INFORMATION"** .......... 11

**C. CBP'S REMAND RESULTS ARE ARBITRARY AND CAPRICIOUS** .......... 12

**1. RECORD EVIDENCE DEMONSTRATES THAT THE PHILIPPINE MANUFACTURER HAD SUFFICIENT RAW MATERIALS, EQUIPMENT, AND WORK FORCE TO MANUFACTURE ROYAL BRUSH'S PENCILS** .......... 12

**2. FINDING OF EVASION AS TO ALL OF ROYAL BRUSH'S IMPORTS** .......... 13

**3. CALCULATING PRODUCTION CAPACITY** .......... 13

**IV. CONCLUSION** .......... 14

## TABLE OF AUTHORITIES

**Cases**

*Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury*, 686 F.3d 965, 982–84 (9th Cir. 2012) 10
*American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) ..... 5
*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4 (1974)..... 2
*Essex Mfg., Inc. v. United States*, 27 CIT 630, 650, 264 F. Supp. 2d 1285, 1303 (2003)..... 11
*Food Mktg. Inst. v. Argus Leader Media*, __ U.S. __, 139 S. Ct. 2,356, 2,363 (2019)..... 7
*Friends of Animals v. Bernhardt*, No. 19-cv-01443-MEH, 2020 WL 2041337 (D. Colo. Apr. 24, 2020)... 8
*Greene v. McElroy*, 360 U.S. 474, 492–97 (1959) ..... 5
*Huzhou Muyun Wood Co., Ltd. v. United States*, 279 F. Supp. 3d 1215, 1224–25 (2017)..... 6, 9
*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)..... 1
*Motor Vehicle Mfrs. Ass'n. v. State Farms Ins.*, 463 U.S. 29 (1983)..... 14
*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..... 11
*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012) ..... 1
*Robbins v. United States R.R. Retirement Board*, 594 F.2d 448, 451–52 (5th Cir. 1979) ..... 5
*Royal Brush Manufacturing Inc. v. United States*, 44 CIT __, 483 F. Supp. 3d 1294 (2020)..........1, 2, 4 5
*SeAH Steel VINA Corporation v. United States*, 950 F.3d 833, 842 (Fed. Cir. 2020)..... 14
*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) .....12

**Statutes / Regulations**

5 U.S.C. § 552(b)(4) ..... 6
19 C.F.R. § 165.4..... 5, 9
19 C.F.R. Part 351..... 9

**Confidential Admin. R. Docs.**

EAPA 7238 – Site Visit Report: CBP Attaché, Subic Bay, Phil., CD 5, bates-stamp CBP0002540–55 (June 15, 2018) ..... 14
On-Site Verification Rep. at 9, EAPA Case No. 7238, CD 129, bates-stamp CBP00011542–85 (Feb. 11, 2019) ..... 5
Royal Brush's Written Arguments, CD 130, bates-stamp CBP0011597–CBP0011641 (Mar. 25, 2019).. 15

**Public Admin. R. Docs.**

Admin. Review Determination in EAPA Case No. 7238, CBP Office of Trade Regulations & Rulings, PD 64, bates-stamp CBP0002449–67 (Sept. 24, 2019) ..... 7
CBP's Revised Pub. Summaries, RPD 60–68, bates-stamp CBP0014438–CBP0014533 (Jan. 5, 2021) .... 3
NTAG Import Data, PD 13, bates-stamp CBP0000059 (June 25, 2019) ..... 13
Phil. Mfr.'s – RFI Narrative Resp. at 19, PD 25, bates-stamp CBP0000826–CBP0000854 (Oct. 3, 2018) (pin-cite appearing at CBP000834)..... 13
Phil. Mfr.'s – RFI Resp. Parts 1 & 2 at Ex. 31, PD 24, bates-stamp CBP0000183–CBP0000824 (Oct. 3, 2018) (pin-cite appearing at CBP000814–24) ..... 12
TRLED – Phil. Mfr.'s Site Visit Engagement Letter at 2, PD 34, bates-stamp CBP0001285–88 ..... 11
TRLED – Phil. Mfr.'s Site Visit Verification Agenda, PD 33, bates-stamp CBP 0001281–83 (Nov. 7, 2018) ..... 11
TRLED Email to Parties – Royal Brush Re-Submission at Email Sent Jan. 28, 2021, 1:46 pm, RPD 75, bates stamp CBP0014554–60 (Jan. 28, 2021) ..... 3
TRLED Email to Parties at Email Sent Jan. 5, 2021, 03:37 pm, RPD 69, bates stamp CBP0014534–CBP0014536 (Jan. 5, 2021) ..... 3
Verification Rep. (Revised Pub. Ver.), RPD 61, bates-stamp CBP0014451–CBP0014493 (Jan. 5, 2021) (pin-cite appearing at CBP0014458–59)..... 6

**Court Filings**

(Remand) Confidential Admin. R., Apr. 8, 2021, ECF No. 60, 60-1 ..... 1

(Remand) Public Admin. R., Apr. 8, 2021, ECF No. 59, 59-1–6 .......... 1
Confidential Admin. R., Dec. 16, 2019, ECF No. 24-1–19 .......... 1
Pl.'s Mem. Supp. Mot. J. Agency. R., Mar. 16, 2020, ECF No. 33-1 .......... 14
Public Admin. R., Dec. 16, 2019, ECF No. 23-1–3 .......... 1
Final Remand Redetermination, Mar. 22, 2021, ECF No. 55 .......... 1, 5–8, 11

On behalf of Plaintiff, Royal Brush Manufacturing, Inc. ("Plaintiff" or "Royal Brush") we respectfully submit these opposition comments to U.S. Customs and Border Protection's ("CBP" or "Customs") March 22, 2021, Final Remand Redetermination, issued pursuant to this court's December 1, 2020, opinion and order. *See* Final Remand Redetermination, Mar. 22, 2021, ECF No. 55 ("Remand Results).[1]

## I. COURT'S REMAND ORDER

On December 1, 2020, the Court of International Trade ("Court") remanded CBP's evasion determination in EAPA Case 7238. *Royal Brush Manufacturing Inc. v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1294, 1308 (2020) ("*RBM Decision*"). The Court ruled that "an importer participating in an administrative proceeding has a procedural due process right to 'notice and a meaningful opportunity to be heard.'" *Id.* at 1305 (quoting *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012)). Further, "[s]uch opportunity must occur 'at a meaningful time and in a meaningful manner.'" *Id.* at 1306 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The Court explained that "due process 'forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation[.]'" *Id.* (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4 (1974)). "Thus, to comply with due process, Customs' procedures must afford adequate opportunity for importers to respond to the evidence used against them." *Id.*

The Court concluded that "[t]he lack of public summaries accompanying the Attaché

[1] On April 8, 2021, Defendant's counsel filed the public and confidential administrative records underlying the remand proceedings in EAPA Case No. 7238. *See generally* (Remand) Public Admin. R., Apr. 8, 2021, ECF No. 59, 59-1–6; (Remand) Confidential Admin. R., Apr. 8, 2021, ECF No. 60, 60-1. To avoid confusion, these opposition comments will use the marker "RPD" to identify *public* documents generated during remand and "RCD" to identify the *confidential* documents. It will continue to use the markers "PD" and "CD" to identify documents filed as part of the December 16, 2019, administrative record. *See generally* Public Admin. R., Dec. 16, 2019, ECF No. 23-1–3; Confidential Admin. R., Dec. 16, 2019, ECF No. 24-1–19.

Report and Verification Report are particularly concerning given CBP's reliance on those reports in its determination." *RBM Decision,* 483 F. Supp. 3d at 1307. The Court found no indication that the redacted information in those reports was not susceptible to public summarization and ruled that CBP's failure to provide public summaries deprived Royal Brush of an opportunity to be heard in a meaningful time and in a meaningful manner. *Id*. at 1305–1308. The Court remanded the matter to CBP to remedy the lack of public summaries and provide Royal Brush the information it should have received to meaningfully respond to the allegations against it. In addition, the Court held that CBP had not explained why the Verification Report did not contain "new factual information" to which Royal Brush was entitled to respond. In so doing, it rejected CBP's conclusory argument that the purpose of verification is to test the accuracy of submitted data and ordered CBP to reconsider and further explain the issue on remand. *Id*. at 1303–1304.

## II. PROCEDURAL HISTORY ON REMAND

On remand, CBP ordered the parties to the investigation to review and provide public summaries of information redacted from documents each party placed on the administrative record and, where summarization was impossible, provide the basis for such a claim.[2] CBP circulated its "revised" public versions of nine (9) documents it developed and placed on the administrative record to the parties to the investigation on January 5, 2021.[3] *See generally* CBP's Revised Pub. Summaries, RPD 60–68, bates-stamp CBP0014438–CBP0014533 (Jan. 5, 2021).

On the same day, CBP re-opened the administrative record to allow parties to the investigation to file information rebutting the "revised" public summaries. TRLED Email to

[2] CBP sent a similar demand letter to the Philippine Manufacturer. *See* TRLED Letter to Phil. Shipper Pub. Summaries (7238 Remand), RPD 2, bates-stamp CBP0011711–15 (Dec. 18, 2020).

[3] It is unclear, based on the record, whether or not the Philippine Manufacturer or its counsel received copies of CBP's "revised" public documents.

Parties at Email Sent Jan. 5, 2021, 03:37 pm, RPD 69, bates stamp CBP0014534–CBP0014536 (Jan. 5, 2021) (relevant email appearing at bates-stamp CBP0014534). On January 19, 2021, Royal Brush filed its rebuttal submission and challenge to the sufficiency of CBP's and Dixon's "revised" public summaries. Between January 19, 2021, and January 26, 2021, Royal Brush attempted to file its rebuttal submission on two separate occasions but was denied. CBP rejected Royal Brush's submissions on grounds of insufficient citation to CBP's "revised" public summaries. On January 28, 2021, after Royal Brush challenged CBP's rejection of certain rebuttal exhibits, CBP affirmatively requested Royal Brush to resubmit its amended rebuttal resubmission and Exhibits E, E.1, H, H.1, and I, which Royal Brush promptly did. TRLED Email to Parties – Royal Brush Re-Submission at Email Sent Jan. 28, 2021, 1:46 pm, RPD 75, bates stamp CBP0014554–60 (Jan. 28, 2021) (relevant email appearing at bates-stamp CBP0014555). The administrative record on remand, as filed with the Court, however, does not reproduce copies of Royal Brush's rebuttal filings. Royal Brush requests the court order CBP to promptly file all such documents with the Court.

On February 19, 2021, CBP transmitted its Draft Remand Redetermination and requested comments thereto. *See* CBP's Draft Remand Redetermination & Req. Comment, RPD 78, bates-stamp CBP0014586–CBP0014612 (Feb. 19, 2021). Royal Brush timely filed its comments on February 25, 2021. *See* Royal Brush's Comments, RPD 79, bates-stamp CBP0014614–CBP0014636 (Feb. 25, 2021).[4] CBP filed its Remand Results with the Court on March 22, 2021.

## III. ARGUMENT

On remand, CBP rejected relevant and timely rebuttal information and published public summaries

[4] The confidential version of Royal Brush's comments to the draft remand redetermination is reproduced as RCD 4.

that do not permit a reasonable understanding of the bracketed information. In so doing, CBP failed to comply with the Court's remand order; deprived Royal Brush of due process; and acted arbitrarily and capriciously. Accordingly, the Court should once again remand this case to CBP with directions to provide Royal Brush with adequate access to, or summaries of, the information in the Attaché Report and the Verification Report, together with an opportunity to respond to that information. The Court should further direct CBP to reconsider its evasion determination in light of Royal Brush's response.

## A. CBP'S ACTIONS ON REMAND CONTINUE TO DEPRIVE ROYAL BRUSH OF DUE PROCESS

The Court explained that "to comply with due process, Customs' procedures must afford adequate opportunity for importers to respond to the evidence against them." *RBM Decision,* 483 F. Supp. 3d at 1306. But the public summaries CBP created on remand fail to do so and are "revised" in name only.

### 1. CBP's "Revised" Public Summaries Unlawfully Limit Royal Brush's Access to Information

A procedure violates due process when an agency relies on "undisclosed" or "secret" information to reach its conclusion, thus depriving plaintiff of the ability to test that evidence. *See, e.g., Greene v. McElroy*, 360 U.S. 474, 492–97 (1959); *Robbins v. United States R.R. Retirement Board*, 594 F.2d 448, 451–52 (5th Cir. 1979); *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) ("use of undisclosed information" presumptively violates due process). Yet CBP continues to rely on "undisclosed" and "secret" information to support its finding of evasion. CBP's primary basis for concluding that evasion occurred is that the Philippine Manufacturer could not have produced all of the pencils it exported to the U.S. in 2018 and so

Royal Brush's pencils must have been manufactured in China.[5] *See* Verification Rep. (Revised Pub. Ver.) at 8–9, RPD 61, bates-stamp CBP0014451–CBP0014493 (Jan. 5, 2021) (pin-cite appearing at CBP0014458–59) ("Verification Rep. (Revised)"). CBP, however, refuses to disclose the numerical data it used to calculate the Philippine Manufacturer's overall production capacity or the results of its calculation establishing that capacity.[6] Instead of entirely redacting those figures, CBP now "summarizes" them as "no." and "number." On the basis of this calculation, CBP concludes that the Philippine Manufacturer could produce only "some" of its 2018 U.S. exports.[7]

Royal Brush cannot respond to this critical quantitative evidence without knowing what the relevant figures are. In fact, Royal Brush's counsel, having access to the complete record during these judicial proceedings,[8] now knows that CBP calculated that the Philippine Manufacturer could have produced approximately { } of its total 2018 U.S. exports.[9] Further, Royal Brush's 2018 imports from the Philippine Manufacturer represent just { } of the pencils CBP calculated the Manufacturer could produce.[10] Accordingly, Royal Brush contends that CBP relied on an unrepresentative sample of data to construct the

[5] The Philippine Manufacturer is { }.

[6] CBP contends that it does not have an affirmative statutory or regulatory obligation to range confidential data or calculation inputs. *See* Remand Results at 32–33. CBP does, however, have an obligation to provide public summaries that permit the reader to understand the "substance" of the bracketed information. Public summaries such as "number" and "no." do not meet the regulatory requirements. Furthermore, a lack of a statutory or regulatory directive "does not relieve the agency of its general duty" to provide due process or exercise its statutory mandate in a reasonable manner. *Huzhou Muyun Wood Co., Ltd. v. United States*, 279 F. Supp. 3d 1215, 1224–25 (2017)

[7] Moreover, CBP continues to maintain that calculations of overall production do not constitute "new factual information."

[8] As the Court notes, "access to the complete record on judicial review cannot cure improper withholding of information by Customs[.]" *See RBM Decision,* 483 F. Supp. 3d at 1307 n. 20.

[9] According to CBP, the Philippine Manufacturer's 2018 U.S. exports totaled { } gross, and it had the capacity to manufacture { } gross of those exports. *See* On-Site Verification Rep. at 9, EAPA Case No. 7238, CD 129, bates-stamp CBP00011542–85 (Feb. 11, 2019) (pin-cite appearing at bates-stamp CBP0011550) ("Conf. Verification Rep.").

[10] Royal Brush's 2018 orders were for { } gross, or { } percent of CBP-calculated capacity to manufacture. Conf. Verification Rep. at 9 (pin-cite appearing at CBP0011550).

equation it used to calculate overall production capacity.[11] But the public summaries prepared by CBP on remand deprive Royal Brush of the ability to make any of these responses.

CBP is required to provide public summaries that permit an understanding of the substance of the bracketed (i.e., confidential) information.[12] "Confidential information," in turn, includes "[(i)] trade secrets or [(ii)] commercial or financial information obtained from any person, which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4) (i.e., Exemption 4 of the Freedom of Information Act). "Commercial or financial information" constitutes information that relates to a commercial or financial interest and needs to be of a kind that is "customarily [and actually] kept private, or at least closely held by the person imparting it[ ]" when communicated to the government. *Food Mktg. Inst. v. Argus Leader Media*, __ U.S. __, 139 S. Ct. 2,356, 2,363 (2019) (noting, also, that transmission under assurance of privacy may, under circumstances, serve as a second evaluative condition).

In its public summaries, CBP refuses to disclose certain *non*-confidential information it used to conclude that the Philippine Manufacturer was "unequivocally" re-packaging Chinese-origin pencil products with the intent of shipping such products to the United States. *See* Admin. Review Determination in EAPA Case No. 7238, CBP Office of Trade Regulations & Rulings, PD 64, bates-stamp CBP0002449–67 (Sept. 24, 2019) (pin-cite appearing at bates-stamp CBP0002461–62). This information includes (i) the country of destination for boxes containing the "Made in China" pencils; (ii) the type of "completed pencil product" contained in the boxes its Attaché observed on the factory floor; and (iii) the overall condition of the boxes used to store the "completed" product. *See, e.g.*, Remand Results at 23–24, 30–31, 35–36. CBP's public

---

[11] *Infra* section III.C.

[12] CBP must provide public summaries of (i) confidential information (ii) that have "sufficient detail to permit a reasonable understanding of the substance of the [confidential] information." 19 C.F.R. § 165.4.

summaries are insufficient and could offer "sufficient detail" because, for example, information like the country of destination, the type of pencil product (information the Philippine Manufacturer freely shares on its website),[13] and the condition of the boxes would not qualify for confidential treatment under Exemption 4. *See, e.g.*, *Friends of Animals v. Bernhardt*, No. 19-cv-01443-MEH, 2020 WL 2041337, at *7 (D. Colo. Apr. 24, 2020) (holding country of destination is not confidential information required to be withheld under Exemption 4); *Argus Leader*, __ U.S. __, 139 at 2363 (holding only information that is kept private (and not freely shared to the public) in the normal course of a party's business is eligible for confidential treatment under the Freedom of Information Act (Exemption 4)). Moreover, CBP seems to agree with Royal Brush that the "pencil type, export destination, or condition of boxes" are not confidential information, yet arbitrarily withholds such information and denies Royal Brush an opportunity to rebut it. Remand Results at 30–31 (CBP, in refusing to disclose the photographs, argues that such photographs would reveal more than pencil type, export destination, or condition of boxes because the photographs show boxes labeled with information revealing Philippine Manufacturer's U.S. customers, which is information "generally considered as confidential").

Royal Brush cannot adequately respond to the observations made by the Attaché, and the conclusions drawn by him, without access to the information described above. By way of example, it is crucial for Royal Brush's defense to know whether (i) the repackaged pencils were of the same type as exported to Royal Brush; (ii) the Chinese characters identify a company name, a type of raw material used in pencil-production, or a color; (iii) the contents of a given box match the label affixed thereto; and (iv) a particular box of "completed" product was packaged for export to the

[13] The Philippine Manufacturer freely publishes, on its website, customer-location information and its product-offerings (accompanied by photographs). *See generally* { }. Plaintiff brackets the citation only because the name of the Philippine Manufacturer has been deemed confidential in these proceedings.

U.S. or elsewhere or for storage, or some other manipulation at the factory.

CBP builds on each piece of the "secret" and "undisclosed" evidence identified above to reach its ultimate conclusion of evasion. CBP's procedures, however, prohibit Royal Brush from testing the accuracy of such evidence, proffering an alternative explanation for the same, or assessing the reasonableness of the conclusions CBP reached based on any such evidence.[14] Due process mandates that Royal Brush be apprised of all the evidence against it and have a meaningful opportunity to respond to that evidence. Accordingly, CBP's procedure for developing "public summaries" violates due process.

CBP's argument that the statute and regulation do not permit Royal Brush to view the above-described information, *see* Remand Results at 19–20, is unpersuasive. The EAPA statute and regulations do not purport to abridge fundamental procedural due process rights. Nor are they properly construed to do so. *See Huzhou Muyun Wood Co., Ltd. v. United States*, 279 F. Supp. 3d 1215, 1224–25 (2017) ("The absence of a specific statutory obligation does not relieve the agency of its general duty to execute its statutory mandates reasonably, or to provide interested parties a meaningful opportunity to comment."); *cf. Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury*, 686 F.3d 965, 982–84 (9th Cir. 2012) (ordering additional process, not provided for under the statute, to enable the accused to confront and dispute the *classified* evidence against it).

CBP's regulations require it to develop public summaries that "permit a reasonable understanding of the substance of the [bracketed] information." 19 C.F.R. § 165.4. This obligation is particularly acute given the lack of an Administrative Protective Order procedure, like the one

[14] The Government, not the investigated party, has the burden of establishing fair and meaningful process. Accordingly, CBP's claim that Royal Brush was "free to obtain" the Philippine Manufacturer's consent to release certain confidential information, Remand Results at 30, stands the Fifth Amendment on its head. Royal Brush cannot act outside the established adjudicative procedures; furthermore, even if it had, any information that it learned would be outside the record and inadmissible.

used by the U.S. Department of Commerce in AD / CVD proceedings pursuant to 19 C.F.R. Part 351. *Cf. Al Haramain*, 686 F.3d at 982–84 (holding that, should the statutory or regulatory procedures prove inadequate, the court can and should craft procedures that will allow plaintiff a meaningful opportunity for comment). Contrary to this regulatory requirement, CBP's "revised" public summaries fail to provide the "substance" of the bracketed information and, instead, simply offer superficial descriptions—for example, "country name(s)," "number," "dates," "completed pencil product," "manufacturer name," and "equipment." To sustain the sufficiency of these summaries would be to read out of the regulation its requirement that the summaries convey the "substance" of the bracketed information. More fundamentally, it would deny Royal Brush due process.

**2. CBP Fails to Provide Sufficient Notice**

In addition, CBP's continued insistence that the Verification Report contains no new factual information deprives Royal Brush of the adequate notice and opportunity to respond that due process requires. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950); *see also Essex Mfg., Inc. v. United States*, 27 CIT 630, 650, 264 F. Supp. 2d 1285, 1303 (2003). Recently, the Court ruled it was "not persuaded that [respondent] possessed a meaningful 'opportunity to present evidence, challenge Commerce's preliminary determination, and otherwise participate fully in the new shipper review,' . . . because [respondent] was not clearly apprised of what, specifically, it was meant to rebut." *Huzhou Muyun*, 279 F. Supp. 3d at 1224–25. Royal Brush has been placed in the same position here.

CBP's investigation, up until verification, focused on whether the Philippine Manufacturer had sufficient capacity, raw materials, and staff to produce Royal Brush's pencils at the time the orders were placed. In fact, CBP's Site Verification Agenda clearly states that "[v]erification will

be made of merchandise contained on specific invoices[,]" each connected to Royal Brush's orders. *See* TRLED – Phil. Mfr.'s Site Visit Verification Agenda, PD 33, bates-stamp CBP 0001281–83 (Nov. 7, 2018); *see also* TRLED – Phil. Mfr.'s Site Visit Engagement Letter at 2, PD 34, bates-stamp CBP0001285–88 (pin-cite appearing at bates-stamp CBP0001287) (requesting the Philippine Manufacturer be prepared "to walkthrough [its] production process in detail using" Royal Brush's invoices and ensure documentation connected to the same e.g., shipping/receiving documents; inventory receipts; payments for raw supplies were available in English); Verification Rep. (Revised) at 2 (pin-cite appearing at bates-stamp CBP0014452) ("the scope of the verification of factual information included . . . seven (7) invoices associated with imports by Royal Brush"). At verification, however, CBP changed course. Despite record evidence of sufficient capacity to produce Royal Brush's orders, CBP decided to pivot to construing the Philippine Manufacturer's overall production capacity.

Although CBP may have legitimate reasons for exploring the issue of overall production capacity, that issue had not been squarely raised prior to the publication of the Verification Report. Consequently, Royal Brush "was not clearly apprised of what, specifically, it [needed] to rebut." *Huzhou Muyun*, 279 F. Supp. 3d at 1224–25.

To the extent CBP argues that two record documents announced the agency's intent to verify overall production capacity, the argument is unpersuasive. *See* Remand Results at 8, 9 n.35. A redacted "factory profile" document, produced by the Philippine Manufacturer to help CBP understand "how the manufacturing process is laid out and operates" does not satisfy the notice requirement. *See* Phil. Mfr.'s – RFI Resp. Parts 1 & 2 at Ex. 31, PD 24, bates-stamp CBP0000183–CBP0000824 (Oct. 3, 2018) (pin-cite appearing at CBP000814–24); Phil. Mfr.'s – RFI Narrative Resp. at 19, PD 25, bates-stamp CBP0000826–CBP0000854 (Oct. 3, 2018) (pin-cite appearing at

CBP000834). CBP is the party responsible for framing the issues, not Royal Brush. Nor was adequate notice provided by an NTAG Import Data report that, at the time of production was titled, "Import Data," with no attribution to a particular entity or applicable year(s), and, per CBP, was "Not Capable [of] Summary." NTAG Import Data, PD 13, bates-stamp CBP0000059 (June 25, 2019). An opportunity for Royal Brush "to guess at the factual and legal bases for a government action does not substitute for actual notice of the government's intentions." *Al Haramain*, 686 F.3d at 986–87.

**B. CBP FAILS TO CORRECTLY RESOLVE WHETHER THE VERIFICATION REPORT CONSTITUTES "NEW FACTUAL INFORMATION"**

CBP again asserts that it does not consider verification reports prepared for EAPA investigations to be "new factual information" and that the contents of the Verification Report in this proceeding, including all calculations, represent the results of the agency's verification and use of factual data on the record. *See* Remand Results at 4–10. But the Court has previously rejected the argument that, by its very nature, the contents of a verification report can never constitute new factual information. CBP now takes the position that only information unrelated to and outside the scope of verification (e.g., agency discovers, at verification, that foreign manufacturer is also evading other AD / CVD orders) may constitute "new factual information," Remand Results at 6, however, this argument reprises the discredited argument that information within the scope of the verification cannot be "new."

CBP's verification process created "new factual information" in this case. Contrary to CBP's claims, it did not merely verify factual data already in the record. Prior to the verification, CBP had not sought, nor had the Philippine Manufacturer provided, data about its overall production capacity. CBP's verification agenda did not request documents connected to overall production capacity or request records substantiating the same. The Verification Report purported

to generate such data—for the first time—by extrapolating from the information produced about Royal Brush's seven orders, which constitutes only { } percent even from the CBP-calculated production capacity. It is therefore incredible for CBP to claim that the data in the Verification Report about the overall production capacity of the Philippine Manufacturer was not new factual information to which Royal Brush is entitled to respond.

### C. CBP's REMAND RESULTS ARE ARBITRARY AND CAPRICIOUS

Finally, key factual conclusions that CBP has reached are arbitrary and capricious. Although the Court does not evaluate whether the information CBP used was the best available, it does scrutinize whether a reasonable mind could conclude that the agency chose the best available information. *See SeAH Steel VINA Corporation v. United States*, 950 F.3d 833, 842 (Fed. Cir. 2020). Further, CBP must support its decision with substantial evidence. *Id.* at 847. "Guesswork is no substitute for substantial evidence in justifying decisions." *Id.* (citation omitted). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951). An agency's reliance on a rationale "that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]" is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n. v. State Farms Ins.*, 463 U.S. 29, 43 (1983).

#### 1. Record Evidence Demonstrates that the Philippine Manufacturer had Sufficient Raw Materials, Equipment, and Work Force to Manufacture Royal Brush's Pencils

CBP ignores record evidence demonstrating that the Philippine Manufacturer had sufficient raw materials, equipment, and employees to produce all the pencils comprising Royal Brush's orders, at the time they were ordered. *See, e.g.*, Royal Brush's Written Arguments at Ex. A, CD 130, bates-stamp CBP0011597–CBP0011641 (Mar. 25, 2019) (pin-cite appearing at

CBP0011640–41) (reproducing a chart that identifies record evidence substantiating production capacity to manufacture Royal Brush's 2018 orders). Instead, CBP concludes that Royal Brush evaded the applicable antidumping order, i.e., that all of its pencils were of Chinese-origin, because the record did not prove the Philippine Manufacturer had sufficient capacity to produce all its 2018 U.S. pencil exports. As explained in greater detail below, Royal Brush's 2018 orders amount to { } gross pencils. By contrast, the Philippine Manufacturer's 2018 U.S. exports amount to { } gross pencils. Accordingly, CBP's decision to use overall production capacity to determine whether the Philippine Manufacturer could satisfy Royal Brush's orders, when there is evidence on the record specific to Royal Brush's orders, is arbitrary and capricious.

**2. Finding of Evasion as to All of Royal Brush's Imports**

In concluding that all of Royal Brush's pencils entered through evasion, CBP ignores the results of its own calculations. CBP concluded that the Philippine Manufacturer could produce the great majority of its 2018 U.S. exports: { }. Royal Brush's 2018 orders represent just { } of the pencils CBP found the Philippine Manufacturer was capable of producing. Despite these findings, CBP concludes that none of Royal Brush's pencils were manufactured by the Philippine Manufacturer and that all of those pencils were instead manufactured in China and entered through evasion. CBP's conclusion is irrational and unsupported by substantial evidence and, therefore, it is arbitrary and capricious.

**3. Calculating Production Capacity**

CBP used data about Royal Brush's orders (e.g., purchasing, production, and employment records tied to production of the pencils Royal Brush ordered) to extrapolate the Philippine Manufacturer's overall production capacity. However, record evidence demonstrates that Royal Brush's orders for 2018 account for just { } of the pencils the Philippine Manufacturer

could produce in that year, per CBP's own calculations.[15] Record evidence also demonstrates that the Philippine Manufacturer had other, much larger customers such as { } and big-box stores like { }. *See* EAPA 7238 – Site Visit Report: CBP Attaché, Subic Bay, Phil. at 3, 16, CD 5, bates-stamp CBP0002540–55 (June 15, 2018) (pin-cite appearing at bates-stamp CBP0002541, CBP0002555). Further, the Philippine Manufacturer's operations allow it to easily increase or decrease production based on demand. Yet CBP failed to seek evidence about the Philippine Manufacturer's overall production capacity from the Philippine Manufacturer, itself, either during the original EAPA investigation or on remand. Under these circumstances, it is impossible for a reasonable mind to conclude that the agency chose the best available information and that its conclusion about the overall production capacity is supported by substantial evidence.

## IV. CONCLUSION

It is clear that the CBP's calculations of the Philippine Manufacturer's overall production capacity in the Verification Report interjected a new issue in this case without advance notice to Royal Brush. Those calculations constituted new factual information to which Royal Brush was entitled to respond. Yet that new information has not been disclosed to Royal Brush in a manner, and in sufficient detail, to enable it to respond. Nor has Royal Brush yet been provided with adequate summaries of significant evidence in the Attaché Report upon which CBP also relies. Finally, certain of the key conclusions that CBP has reached are unsupported by substantial evidence and must be overturned. Accordingly, the Court should once again remand this case to CBP with directions to provide Royal Brush with adequate access to, or summaries of, the

[15] Royal Brush's orders for 2018 amount to { } gross. *See* Pl.'s Mem. Supp. Mot. J. Agency. R. at 24–26, Mar. 16, 2020, ECF No. 33-1 (explaining and citing to relevant record evidence). CBP calculates the Philippine Manufacturer's annual production capacity to be { } gross. *See* Conf. Verification Rep. at 9 (pin-cite appearing at CBP0011550). Thus, Royal Brush's orders account for { } percent of 2018 production capacity as calculated by CBP.

information in the Attaché Report and the Verification Report, together with an opportunity to respond to that information. The Court should further direct CBP to reconsider its evasion determination in light of Royal Brush's response.

Dated: April 26, 2021

Respectfully submitted,

R.A. Oleynik

Ronald A. Oleynik
Antonia I. Tzinova
Dariya V. Golubkova
Libby K. Bloxom
**HOLLAND & KNIGHT LLP**
800 17th Street NW, Suite 1100
Washington, DC 20006
Tel: (202) 457-7183
*Counsel to Plaintiff, Royal Brush Manufacturing, Inc.*

## WORD COUNT CERTIFICATE OF COMPLIANCE

Pursuant to the court's order in *Royal Brush Manufacturing Inc. v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1294, 1308 (2020) and the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(1), the undersigned certifies that these opposition comments do not exceed the 5,000 word limitation requirement. The word count for Plaintiff Royal Brush Manufacturing, Inc.'s Opposition Comments to Agency Final Remand Redetermination Pursuant to Court Remand, as computed by Holland & Knight LLP's word processing system (Microsoft Office Professional Plus 2016), is 4,673 words.

Respectfully submitted,

Dated: April 26, 2021

Ronald A. Oleynik
Antonia I. Tzinova
Dariya V. Golubkova
Libby K. Bloxom
**HOLLAND & KNIGHT LLP**
800 17th Street NW, Suite 1100
Washington, DC 20006
Tel: (202) 457-7183
*Counsel to Plaintiff Royal Brush Manufacturing, Inc.*